Thank you, Your Honor. May it please the Court, my name is Lachlan Shelfer, and I represent the appellant, Mr. Zapata. Your Honor, Mr. Zapata moved to have his supervised release revoked and to be sentenced in absentia, so he would at least have the possibility of receiving no additional time of incarceration after his present term of service is up. The district court denied that motion, but the district court's order, as we now know, was fundamentally premised on errors of fact regarding the underlying record in the case, and we are here to correct those errors. The district court denied Mr. Zapata's motion for a single reason, timing. It said it was premature, also the reason that the government gave for denying Mr. Zapata's motion. But the reason that the district court thought that Mr. Zapata's motion was premature was because the district court was laboring under the misimpression that the revocation proceedings had not even yet been initiated when in fact we were right in the middle of the proceedings. The district court thought that the probation office had not yet brought a petition to revoke the supervised release. It was under the impression that it had not yet issued a warrant when in fact all of these things had happened. The district court had found that there was probable cause to believe that Mr. Zapata had violated the terms of his supervised release. What was left, perhaps if the district court wanted, it could ask the government for its input. It could, if it wished, ask the probation office to give further input than the probation office had already given. But if the district court had known that that is all that was left to do, I think by the face of the order, it's clear that the district court certainly might have exercised its own discretion in a different way. Let's assume now that- I think this is- Go ahead, Judge Blitzer. I think this is clear from what you just said, but I want to make sure I understand it. Had the district judge been properly informed of all of the relevant facts, she still would have had the discretion to say, I'm not going to sentence you now, is that correct? I believe that's correct, Your Honor. We are not arguing in favor of a rule that requires or mandates that the judge sentence, but instead that this court exercise its ordinary abuse of discretion. All Mr. Zapata had the right to was to have his motion adjudicated on a factual record that was correct without the court abusing its discretion. A second question. How certain are we that if the custodial sentence that he's now serving were to expire, that the district judge would not have the authority retroactively to impose a concurrent sentence? Well, Your Honor, I actually don't think that this court needs to wade too deeply into that. That wasn't the question, whether we have to wade deeply. I'm interested in the answer, too. How are you taking the certain position that the district judge could not sentence concurrently if the time his sentence had run? Your Honor, I have gone out of my way in my briefs not to prejudice my client in any future proceedings. I think that there are arguments on both sides of this case. There's a recent case, United States v. Hill, that suggests it might even be unconstitutional, at least in some circumstances, for a court to lose the power to. Are you relying on the fact that it's uncertain whether the district court would have authority to impose a concurrent sentence after the criminal sentence had run? A little more than uncertainty. I'm looking at the face of the order, which is under review, and the fact that the district court itself acknowledged the likelihood that it would conclude, it would ultimately lack the power to impose a concurrent sentence. In terms of jurisdiction of the Supreme Court in Flanagan, the United States noted that it's at the danger of that the issue would become moot, and that that's really the issue for jurisdictional purposes that this court can analyze. And I think the danger of the district court concluding that it lacked the power to impose a concurrent sentence later on is clear from the face of the order. But beyond that, Your Honor, even, frankly, even if the court did have the power to impose a concurrent sentence at some uncertain later date, Mr. Zapata would still suffer the very harm that he is seeking to avoid, the harm being the possibility of arguing for no additional term of incarceration after his present term has served. So even if he did, even if the district court either gave him full concurrent sentence or downward departed to zero months, as the Supreme Court held in Sell versus United States, the very harm that my client is seeking to avoid would already have transpired. But counsel, that's where I think I'm having the problem with your position in this case, is that the Supreme Court has stressed that it must be an important interest, an important issue. And there are many things that, as a former lawyer myself, seem very important. A speedy trial violation, the Supreme Court has held that cannot be reviewed under the collateral order doctrine, even though if the guy were to win, he should never have been in jail in the first place, quite possibly. So I'm wondering how you can square this case with the important issue requirement that the court has held. Can you talk about that? Sure, well, first of all, the McDonald case that held that the collateral order doctrine does not apply to a speedy trial, to a motion to dismiss an indictment for violation of the speedy trial requirement, didn't hinge on the importance requirement. And I would also note that I don't think the government has contested that there is an important issue, that there is or is not an important issue here. But it seems to me, Your Honor, that the important issue is a man's liberty, is a man's ability to go about without being in incarceration, the possibility of less time incarcerated. Okay, and I see where you're going with that, but then I think here comes my next question. So the next defendant comes by, and he says, well, look, the district judge has set my sentencing for 10 weeks from now, which is standard in many districts to give the probation office enough time to prepare the pre-sentence report. But my family can be at my sentencing in two weeks. They can't be there in 10 weeks. And I think if my family is there, they'll do a really good job of convincing the judge that I should get probation rather than incarceration. In that situation, he has a good argument that having his family at the sentencing would increase his chances of not having to be incarcerated for a longer term. The district court says, no, you know what? I need the PSR in this case. You gotta wait 10 weeks. Under your view of this doctrine, could the defendant appeal that decision to not move up the sentencing? Well, Your Honor, I would just note that in this case, Mr. Zapata filed his motion over two years before. I understand this case. I'm asking about the hypothetical, because one of the things the Supreme Court has stressed is that you don't, when you're looking at collateral order, you don't look at the one instance here. You look at the category. So I'm trying to understand how you would define the category in this case. So in my example, someone wants to move up their sentencing and argue that by accelerating their sentencing, they have a better chance of receiving a long-term of probation rather than further incarceration. Your Honor, I think that the order, first of all, I think that this can be narrowed to this particular class of orders. But let's get back, let's get your time running down. Hypothetical. Yes. Your Honor, I think that if the, I think timing is an essential issue in these, especially with these appeals. And so I think that were there sufficient time to allow the appellate process to go through if the defendant had given the district court and appellate court sufficient time, then I don't think that that particular hypothetical, I don't see anything that would prevent that hypothetical from being important enough, certainly. So your view would be that if a defendant could make an argument concerning his sentencing date, that in some way would benefit him in the long-term what a sentence would be, that would be immediately appealable. I think the issue would have to be I mean, it would have to be important enough in the sense that in this case, we're talking about a district court possibly lacking power, or let me put it another way. The order that is under review here, if this court were to deny this appeal and dismiss the appeal, we know for certain that Mr. Zapata would absolutely lose the opportunity to have a sentence that would not exceed his current term of incarceration. We know that for a certainty, whereas in the hypothetical that you proposed, it is not known as a certainty, it's a possible outcome, but perhaps the limiting principle here would be the absolute nature of the harm. Well, I could have given a better answer than you did to that question, but. Thank you, Your Honor. But what I'd like to know is what gives your client the right to have the sentence done? It's, I gather you say it's the issuance of the warrant and the filing of the documents. Suppose the government had just waited until after he finished his sentence and then decided to revoke the probation and give him a sentence for that. Is there any way to force the government to bring this case to a head before the sentence of the main violation, before that sentence has been completed? Can you force them to bring their revocation hearing? Well, Your Honor, first of all, my understanding of the revocation hearings is that this is a power that it's a judicial power. I should say proceeding rather than hearing. I, yeah, thank you. Proceeding. I should have said that. But the proceeding is a, the power to revoke a supervised release and impose a sentence for that  that's within the judge's discretion, the probation office that brought the petition to the court in the first place. So I hear two questions from what you were saying. The first question, if I could answer, am I arguing that Mr. Zapata has a right to a sentencing, to an immediate sentencing right now? We're arguing for a much narrower ground here. And that is simply that Mr. Zapata has the right to have his motion adjudicated without the court abusing its discretion, meaning on a full factual record with the court's eyes wide open about exactly what is going on in the case. In terms of- No, I've got a different, excuse me, I've got a slightly different cut at this. As I think you were alerted not too long ago to a couple of cases by the clerk, not mentioned by either side. I'm particularly interested in the court's opinion in the Sester case written by Justice Scalia. I think Sester changes the analysis under section 3584. Most courts had interpreted 3584 that the initial language in the first sentence to restrict the occasions upon which concurrent sentences could be given. That is to say, only if you have a continuously running first sentence, can you then run concurrently a second sentence with that? Sester says no. Sester says that word only is not there and cannot be read into it, which I read as then saying that, well, the earlier law such as the court's decision in Moody was not overturned by that statute. As I read Moody, Moody says that a parole revocation sentence may be imposed retroactively even after the termination of the earlier custodial sentence. That is to say, I think it entirely possible that we might hold that the district judge does indeed have the authority after the termination of the current custodial sentence to sentence concurrently with respect to the parole release violation. How do you respond to that? Well, Your Honor, I think that that is a plausible reading. That's certainly, the statement is certainly in Moody. Moody Court seemed to understand that later on after the end of a particular term that the defendant would be able to receive a concurrent sentence. I would not object to that, Your Honor, as long as this court understands that the harm, just to focus the harm, it's the ability to receive no, the possibility of receiving no additional time. So even if the district court at a later time were to impose a concurrent sentence, which if things get there, we certainly would welcome. Still, in this particular appeal, that does not do away with the harm that necessarily will occur if this court were to deny this appeal. Well, yes or no. I mean, we continue to have this problem of whether or not this is appropriately brought as an interlocutory appeal, but it strikes me as at least a plausible argument for interlocutory appeal. If the current law is, or is thought by the district court to be, that the district court simply loses the power retroactively, loses the power to sentence concurrently if it becomes retroactive, well then, you've got a major harm. It's not merely inconvenience, it is the possibility of concurrent sentence disappears in the view of the district court. Well, until that question is decided, I think you've got harm. Now, we may end up deciding that the district judge does have the power concurrently to sentence retroactively, but at the moment, that's not established under our case law. Yes, I think that's correct, Your Honor. You mentioned a case, and I'm sorry, but I'd like to have you just mention it again. The one you said that it's sufficient that there'd be a danger? Well, so the way that the Supreme Court in Flanagan describes Stack v. Boyle versus the other cases, the criminal cases which concern the right not to be tried, it says that in Stack v. Boyle, there's mootness, whereas in the other ones, there is no danger of becoming moot. And so my point being that here, that mootness danger is present, and so Flanagan recognized that as a separate way to satisfy the third prong of the Claddell Order Doctrine. If that makes sense, yes. Did you want to say if you? Yes, I would. Thank you so much, Your Honor. Well, fortunately, it's a lovely afternoon here, and I don't think we're gonna hold you exactly to the time. If anyone has any questions. Ms. Voights. May it please the Court? My name is Anne Voights, and I represent the government in this case. This Court should dismiss the District Court's, dismiss defendant's appeal from the District Court's order deferring an adjudication of defendant's supervised release revocation without prejudice because it does not fall within the narrow category of orders that fall within the Claddell Order Doctrine. Even if this Court has jurisdiction, though, it should affirm the District Court because the District Court didn't abuse its discretion in proceeding on, declining to proceed on such a limited record based on what was at best a partial and conditional waiver of the defendant's rights at a supervised release. Now, is your argument that even if he loses his opportunity to have the sentence run concurrently, if that's the rule, that this would still not be appealable as a Claddell Order? That is correct. First, I'd note that whether or not he has the ability to have a sentence that is concurrent, the District Court can, and I think there's no doubt about this in the case law, can take that into account in fashioning a sentence on his supervised release revocation. Well, take it into account is not the same thing as losing the right to have it run concurrently. Taking it into account, what does that mean? If the issue is can the Court impose a concurrent sentence and your answer is no, I mean, then at least we know we're dealing with a concrete loss of an important opportunity. And I think the answer is here, that what it means practically is that the Court can either sentence him to less time or indeed to no time, or effectively time served. What do you mean? They can accomplish the same thing as a concurrent sentence by sentencing him to no time? Effectively, yes. And so- But a district judge, oh, sorry. I'm sorry, Judge Reinhart. So why does the government care if he can be sentenced to no time, which is the same practically as concurrent? What do you care about this? I mean, I know you have valuable time. Why are you here if you think he can be sentenced to infect to a concurrent sentence or to no time? Because I think there are two issues here that are of importance well beyond this case. First, the scope of the collateral order doctrine, because as Judge Owens pointed out, what this Court is being asked to decide is not whether this particular order is appealable, but whether this entire class of orders are. And so if this Court is saying that any time an order deferring a ruling, because that is what- No, not any time. Any time that it's right for a ruling and you lose a fundamental right by not conducting the hearing under a mistaken impression of law, again, I understand your worship of the collateral order doctrine as a representative of our government, but is that the basic reason? You don't care whether he gets, in effect, a concurrent sentence? That would be all right with the government? I think we haven't reached that issue because the second problematic issue is- I've reached it. We may not have, but- Right, but with respect to the ultimate merits, we think the District Court couldn't proceed on this record. The only thing that they had in front of them was the Form 12. And in essence, what he was asking the Court to do was like asking a Court to sentence based on an indictment and a penalty sheet. The District Court, and I think looking at- He didn't say the government couldn't give what other additional information it had. No, but in fact, what the defendant had done was he had only waived his right to be present. He had not waived any of his other rights. And in doing so, he only waived that right if the Court agreed to give him a concurrent sentence. So essentially, the Court was caught in a procedural quagmire. It could only proceed if it had already reached the conclusion that a concurrent sentence was appropriate. And at that point, they didn't have, and looking at the Court's order, I think a fair reading is not that it was predicated on a mistaken assumption about a Form 12, which in fact the Court had available to it in the docket, but the government did not. What it had was, and what it said was, if the Court could look at ER 52, they said he's entitled to an initial appearance, to a preliminary hearing, and probable cause is found to a revocation hearing, and that all of those were the procedures that the defendant was asking them on a limited record to bypass. This was a district court judge who had never seen this defendant before, had never handled this case before, and was being asked to make a decision about whether a concurrent or consecutive sentence was appropriate. Would it have made any difference if it were the same judge? I think it, I still think it would be not subject to collateral order doctrine, but at least you would have some understanding of who the defendant was and some background. But this was originally a fast-track case, so there wasn't even a PSR or a full PSR on which to rely. This was a case in which there was a limited record available to her, a partial and conditional waiver that required her to reach a result without being able to go through the procedures that would help her figure out if that result was correct. Did, does the requirement that the judge act, what was it, two years ago this request was made, did, does it, does it, did it prevent the government from providing all that information that you say was missing? No, under the local rules, what happened was the Form 12 was in fact filed on March 26th in 2013. And then the defendant in this case, in the Southern District case, the information was filed on April 9th, a few weeks later. And at that point, the arrest warrant was filed. I believe the detainer was entered at some subsequent point. Yeah. But essentially the question is, could the government or was the government acquired to writ him, or bring him up in order to proceed also on the supervised release revocation? And I think Morales-Cisabarra says that there was no obligation on the government to do so. And the district court was within. Well, I got that submission, but I was just asking, you seem to suggest the government was deprived of its opportunity to provide the court with all this information. That's not correct, is it? I think to do so properly, that is to give, to have the defendant present, to have probation submit a written recommendation. That didn't have to be present for the government to provide the information. No, but I think absent that, absent a chance to have a hearing where these issues were fleshed out, a chance to have probation actually file a written recommendation. All of those are rights that the defendant, if for example, the district court had proceeded and concluded that a concurrent sentence wasn't appropriate, then the defendant would have a legitimate complaint about the fact that she had proceeded without an adequate waiver of his rights, or. There wasn't an adequate waiver? Is that the point, that he didn't waive his rights? The only right that he waived in his pro se motion was the right to be present. Made no mention of any of the other rights. The fact that he's pro se suggests he may not understand all of them. And so in this case, the district court was being asked to proceed by bypassing all the normal procedures that make sure that he understands what he's engaging in. And he was essentially engaging in plea negotiations with the district court, saying I will waive this if you agree to let me proceed. But if I could return to the collateral order issue, because I think the problem here is that it really doesn't meet any of the three requirements. First, it doesn't conclusively determine the disputed question. The district court specifically said that this was a denial without prejudice, that he was entitled to raise the arguments again. She didn't necessarily say that she would agree with them, but she was reserving ruling. And under this court's rulings in Miller and Alto, an order that defers a decision is not in fact a final or conclusive order. Second, with respect to- Can I interrupt you right there? Certainly. The deferral may be more than a mere deferral. That is to say, it may change the nature of the decision. If it is possible to, as it were, retroactively issue, impose a concurrent sentence after the completion of the first sentence, well, no harm, no foul. On the other hand, if the district judge is prevented by law from imposing a concurrent sentence if the first sentence has been completed, we're in a totally different universe. Now, you may say, but the district judge may accomplish the same thing, but it's a very different game if one is disregarding the guidelines and imposing a zero-time sentence with a very substantial departure from the guideline as distinct from concurrent sentence. So I'd like to address the question that I addressed to your adversary a moment ago. Do you take a position with respect to whether the judge has the authority after the expiration of the first custodial sentence to impose a concurrent sentence for violation of the conditions of supervised release? You hint that the judge has that power in your brief, but you don't quite say it, and you don't cite Sester. You do cite Moody. Right, and I think there is some tension between Sester and Montez Ruiz, because Sester deals with the issue of whether, and says that a federal court can impose a sentence that is to run either consecutively or concurrently to an as-of-yet unimposed state sentence. But Montez Ruiz says that when it comes to a case where that as-yet unimposed sentence is federal, that that is a case in which the court cannot. Yeah, but both the Sester case and our Montez Ruiz case deal with the other sentence being in prospect rather than already having been imposed and already having been served. And I have to say, I'm very sympathetic with Judge Burns in the Montez Ruiz case, and with our panel in ruling on that one. Judge Burns was being asked to decide whether to impose concurrently or consecutively without knowing what the state court sentence was going to be. Right. Well, understandably, a district judge is going to say, well, wait a minute, this is too hard for me. I'm not sure I can do that. And I think we're right in Ruiz. The footnote, footnote number four, as I recall, in the Supreme Court's decision, where it says, well, it might be a different question if it were not a state and a federal, but rather a federal and a federal, that footnote is confined to the judge trying to sentence in anticipation of a yet-to-be-imposed federal sentence. So it's all in anticipation of a yet-to-be-imposed. I don't regard either Montez Ruiz or that footnote as addressing in any respect, what do you do when you have an already-imposed and already-served sentence? And now the question is, does the judge have the authority to impose retroactively a concurrent sentence? I do think that I read, and I don't think there's much ambiguity about it, that the analytic structure of Justice Scalia's opinion in Sester is to say that it's wrong to read that word only into the prefatory phrases of 3584. And he says that that's not designed to change the law, which tells me that Moody's still good law. Okay, now it's a long statement. What, if anything, do you disagree with that I've just said? So I think the question is, we agree that Sester clarifies that there's not an implicit only in 3584. I'm sorry, I didn't hear. I apologize. I think it's clear that Sester says that there's not, and we agree that there's not an implicit only in 3584. And so I think the only issue is whether the use of the word undischarged precludes cases where there is, in fact, a discharged sentence. I think there are at least two circuit cases that have held that it does, that limiting the ability to impose a concurrent sentence to a sentence that is, in fact, not fully discharged hangs not on reading only into the statute, but on the meaning of undischarged. Now, are you citing cases that are post-Sester? I believe that both are, in fact, before Sester, so. Yeah, you see, in my view, Sester changes the universe because it says the only, that I think pretty much every court has been reading into 3584, isn't there and shouldn't be read there. So, I mean, it has to be a post-Sester case for me to say, well, okay, now I think I better take that into account. If I could turn to the, understand the court's point on that, I think it is. Okay, so next question, and I hope I can be quicker about it, and that's on collateral order. If we assume that the question in front of the district judge the district judge has a pretty good answer to, or pretty sure of her answer, and that is she does not have the authority retroactively to impose a concurrent sentence. And then the question before us might be, does she or does she not? So the question really is, does the authority to impose retroactively a concurrent sentence exist or not exist? Is that a sufficiently important interest to justify collateral order review? This is more than mere convenience or family showing up to make a better showing. It is eligibility or ineligibility to get a concurrent sentence retroactively. Is that a sufficiently important interest? And I think it is not because that fourth, or that third- It is not? Because the third category is, is it effectively unreviewable? I mean, that is really sort of the focus of the collateral order document. And this is not something that is unremediable. He can raise this issue if he has a, if ultimately he has a supervised release hearing, if he is sentenced, if he appeals from that sentence. But why is it not effectively unreviewable if the district judge says, well, I'm not gonna sentence you now. And we then later, when the question comes to us, well, did the district judge have the authority afterwards to impose a concurrent sentence? And we say, no. Well, I think it's lost. Whereas it would not have been lost if the district judge had gone ahead and done the concurrent sentence while he was still serving the custodial sentence. Help me out with that one. Well, I think if you look at the way courts have construed the issue, they've looked at not whether it's wholly remediable, but whether it's reviewable. And so, for example, I think the closest analogy is to, as Judge Owens pointed out, to the Speedy Trial Act, where if there's a Speedy Trial Act, the trial, if the court granted the motion, the trial wouldn't in fact proceed, but the defendant will go through the trial, can raise it on final appeal, and the Supreme Court has held, and this court has held in the context of the statutory Speedy Trial Act, that that is enough, that that is a sufficient remedy. It doesn't require a perfect remedy, but some remedy. And the fact that here the district court has the ability to take into account if there is a loss, what that loss, how that should factor into the sentence, I think, and that this court can then revisit that issue on a final appeal, is what's ultimately important. Maybe I'm missing something, but explain the difference. You say, take bail. If you say it's unremediable, but you can review it on appeal, that's not, doesn't qualify. You could review it on appeal, but you couldn't remedy the fact that the person wasn't given bail. What I was, to clarify, what I was saying is that the test is whether it's effectively unreviewable. It does not have to be wholly remediable on appeal. That is, there are some harms that may not be fully fixed. Is it reviewable when you can't do anything? Your rights are irrevocably lost, but you can review it. Is it enough? What the courts have said is that it's not whether it is, it doesn't have to be wholly fixable on appeal. The question is, can the court review it? And here in this case, the court can. It will, when it is conclusively decided, when, because the issue here really isn't separate from the merits. What we're looking at is the when he is sentenced is implicitly tied to what he thinks that sentence should be. And what he is arguing for is that he is entitled to a concurrent sentence. That not having this hearing now deprives him of that. Our questions are not, is he entitled to the sentence? Our question is, is he entitled to a determination of whether he should have that sentence before he no longer can obtain the determination? And I think, I think your view is that he cannot any longer after he's finished serving receive a concurrent sentence, but that he could receive no additional time under a different guise. That's great. I think it is something that, I think at a minimum, the court can take it into account in fashioning the sentence. But take it into account isn't the same as giving you a right. If you say that you do lose your right to a concurrent sentence, but the court can take it into account in the length of the sentence it gives you, those two things aren't the same. But to take a step back, I think there is, in fact, no right to a concurrent sentence. There may be cases where- No, the right to a determination is the question. You don't have any right to the ruling on the merits, or the content of the ruling on the merits. You just have this, I won't say odd, but a governmental procedural view that it doesn't matter whether the guy can get no time, as long as you say it, well, okay, I'm gonna give you no time because I would have given you a concurrent sentence if I could have. But it's offensive to say you should be able to have had that hearing. But you agree he loses that right totally, except that in some other proceeding you can give some weight to it, but you can't give him a concurrent sentence. But I think the thing is, he doesn't have a right to, he has a right to have a hearing without reasonable delay. And what he's asking for is the right essentially to set scheduling, to take that out of the district court's hands, and to set it here. Here the district court had a Form 12 in front of it, and that was all. And he was asking to- But as we said, he could have had a lot more in front of him if he wanted. He had plenty of time to get more. And then you retreat to the idea, well, maybe the defendant wasn't advised and he would challenge the nature of the hearing. That's a pretty desperate argument. But I don't see the argument that the government couldn't have given the district court all the information he would have wanted. I think ultimately it is, as the district court recognized, it had the discretion. But in this case, based on this record, it was not an abuse of discretion not to proceed. I think with respect to what the government's position on the merits ultimately would be, the government didn't articulate one below. The sentencing guidelines do argue in favor of a consecutive sentence. But in this case, what defendant is asking is that this court find first that every order in this class, every order from any defendant who faces both a substantive criminal charge and a supervised release revocation, then he has a right to have a hearing on that supervised release revocation so that he does not lose a right that he doesn't actually have. That is a right to have a concurrent sentence. So I think essentially what he's asking for is first, unworkable. Second, I think it poses significant problems in terms of what a defendant can then appeal. Because if, in essence, a scheduling order can be the subject of an interlocutory appeal, I think that is fundamentally problematic. And it, I think, runs particularly afoul of the second prong. Because here, the issue of what sentence he got was implicitly tied with when that sentence would be announced. Well, generally, scheduling orders are clearly not. There are circumstances under which they are. I don't know whether you remember the case of the judge who insisted on having the last day of a hearing when the defendant's father was dying and would not give him a day's continuance. I don't know whether you recall that case. But we decided in that case that although the scheduling of the trial is not ordinarily the subject of our review, that when it had that drastic an effect on the person, it could be. I believe that was on mandamus, if I remember correctly, which is an alternative and difficult standard that defendant has made no attempt to meet here. And I think... Okay, I didn't really want to get you into that. I didn't know what you remembered that case. I did. Can I ask one question? Does the government take the position that the district court loses its authority to impose a sentence concurrently once the first custodial sentence is finished? Does the judge lose the authority to do it? What's your position? I think that under prior case law before Setzer, it did. I think Setzer leaves it ambiguous. And I think there is some confusion. So I'm not sure that the answer is clear. It is clear, I think, that the district court, as I've said, could take that into account in fashioning the sentence ultimately. No, no, no. I just wanted to know whether you were taking a position on what the law is. And you said before Setzer it was clear and now in your review it's not clear. I think it is more ambiguous. But I'm certainly happy to submit additional briefing on that point if the court is interested. It's the government's position that it's not clear. I think our position, hopefully it's clear, but our position is that I think in this case, the district court's decision didn't rely on a belief that she would lose the ability, or even if she did, she. That's not the answer to the question. The question is, the government's position is not that you forfeit your right or that you don't forfeit your right, or forget right. You don't forfeit the opportunity to have a potential concurrent sentence. But that that's an unclear question. Does the government reserve the right once this goes back to the district court in some form, does the government reserve the right to argue to the district court that it loses the authority to impose a concurrent sentence once the current custodial sentence is finished? I think looking at Setzer in the language, I think we would take the position that 3584, that undischarged still means a sentence that has not been completed. And that Setzer, to the extent that, while it may make that more ambiguous, because it does clarify that there is no only implicit in it, at least if you were looking at 3584 as the source of that authority, then it doesn't exist under 3584. The answer, as I understand it, is the government reserves the right to take that position in front of the district court that has lost the authority. That's correct. Is there anything that would prevent the district court from sentencing the individual in that scenario to one day and having the transport day to court count as that one day? No, there's nothing. In fact, whatever that time is, that can be in both, the court can consider the time that he already served and also the time that it takes to get him in front of. So under Judge Fletcher's scenario about whether the court has the power to concurrently sentence when a sentence is expired, in reality, he shows up for court sentenced to one day. It is effectively... It's the same thing. Yes, and that I think is ultimately... In which case, it doesn't seem to me such a big deal. If you let the court say directly and honestly what it's doing, which is sentencing him for the time concurrently, but you don't want him to say that, you want him to say, well, I'm gonna give you one day and give you credit. And I'm gonna do so in a substantial departure downward from the guidelines, which feels very different to a judge. And it feels somewhat offensive to me that we're allowed to play these games with it instead of saying what we're really trying to do. We're really trying to say, look, the right sentence for you is that this is the time you've already done. That's the right one. I think perhaps we're... Because I think the district court can say that. And in fact, in explaining why she makes whatever decision she makes, I think she should articulate if she's taking into account. I think you should have had a concurrent sentence. But the government prevents me from giving that to you. So I'm gonna do it anyway. Although I'm gonna have to overcome a lot of hurdles and pretend I'm doing other things and pretend I'm following guidelines and jumping through hoops. But what I really wanna do is give you a concurrent sentence. And I think the law would be a lot better off if we could say in those circumstances what we really mean and be honest about it. That's not your fault. But counsel, in your years as a prosecutor, from what I remember, the guidelines in the sentencing and the probation revocation are very, very loose and always have been, correct? They were never binding before, book, or after. And in your experience, you've seen lots of judicial court judges do the very thing that Judge Reinhardt just said would be difficult to do. Yes, and in fact, often they may make decisions and they articulate reasons why they are imposing no time. Often, for example, with first offenses or with one where they feel like it wasn't a particularly serious violation. Precisely because I think it is easier and there is more flexibility in the supervised release context than there is in the more standard sentencing after a criminal conviction. I see that I'm well over my time. You're slightly over time. I apologize. If the court has any further questions, I'm happy to answer, but otherwise I'm happy to submit. Thank you. We'll give you extra time, I appreciate that. Thank you, Your Honor. I just had a few points to make, if I may. The first is the argument came up, it was almost a sort of a slippery slope argument that if we allow this, what else are we possibly allowing? I would note that there's only one circuit to have addressed this issue, it's the Tenth Circuit and that Judge McConnell in 2008 held, not too difficultly actually, that these are appealable. So it's been eight years. I was able to find only one other case just this year that I cited in the brief.  with these sorts of appeals. So I think the slippery slope argument just on the empirical analysis doesn't really hold up. I also wanted to note, we had discussed earlier the speedy trial, both the constitutional and statutory. There's Mermanish that this court held and McDonald. I just wanted to distinguish both of those if I could. In McDonald, the point, the reasoning, the Supreme Court's reasoning was that a speedy trial violation requires an analysis of the prejudice at the trial. And so it's actually, it was impossible, the court held, for it to know, for it to even undertake a speedy trial violation analysis before the trial itself. So that was the reasoning that the Supreme Court held, which is not applicable here. And then in Mermanish, I should note that the Ninth Circuit held only that the speedy trial act, that a violation of the speedy trial act was not, that it violated essentially the third prong of the collateral orthodoxy and that it was not unreviewable on appeal. But the only reason it held that was because the only argument that the defendant raised in Mermanish was that this statute gave it a right not to be tried. And so that's the only argument that the Ninth Circuit then analyzed and said, actually, this does not give you a right not to be tried. So that's the only basis for the Ninth Circuit. And I think both of those are distinguishable from this case. Also, in terms of whether something is wholly unreviewable, I should note that there's stray comments in Supreme Court cases that seem to go either way on this issue, how narrow it has to be. But the most recent criminal case that the court has analyzed this, which was Selle versus United States, in there, the court recognized that in Riggins v. Nevada, that shows that an order of involuntary medication is reviewable later from the final sentence under vacature, but nevertheless, the court held the harm that Selle is trying to avoid would already have happened. So even though it's imperfectly remediable, perhaps down the line, now the harm will have already taken place. And that's the most recent Supreme Court discussion of this. Supreme Court also said there that, what if Selle is acquitted? Then how will he challenge his involuntary medication? And you could make a similar argument here of if this court dismisses this appeal for lack of jurisdiction, and then Mr. Zapata is taken into custody and as many of these cases show, there is a possibility of a very prolonged incarceration while the revocation and sentencing procedure occurs. Let's say that happens for a prolonged period. And then at the very end, the district court, there's a possibility that the district court then sentences Mr. Zapata to no additional time. Again, it would be difficult for him to then appeal that and to appeal this violation, and this clear abuse of discretion that happened and the harm that he has already received. The government also again raises its contention that Mr. Zapata's motion was a contingent motion and that he was trying to illegally negotiate a sentence with the district court and cut the United States out of the process. But before this brief, that characterization of Mr. Zapata's motion and it was never raised, the district court clearly didn't look at it that way because it denied Mr. Zapata's motion because it was premature. If it was denying it was premature, it didn't see any fundamental problem with it. So the district court clearly construed it in a different way, and as did the government who also advised the district court that it was premature. Can I go back to that one quick question I asked? What is it that makes the district court, puts it in a position where it should decide the motion before the end of the sentence? What has to happen? And what if those things don't happen? Does that mean the right is lost? You mean moving forward in this case right now? No, not this, in general. A prisoner who crosses the street against the red light and gets the one year sentence for it also gets his probation or his supervised release put into question. Can the government just wait until he's finished serving the one year sentence and then bring proceedings and then file a writ and arrest warrant and do all of that after he's completed the sentence? And by doing that, can they frustrate the opportunity to get concurrent sentence? Well, your honor, I would say that SESTRA that we've just been discussing, I think one proposition that it stands for is that it is the purview of the district court, not the executive, what sentence the defendant ultimately receives. And so I think that there's something fundamental about that. Mr. Zapata has not raised particular challenges in general to a constitutional, he's not raised a constitutional right here or something to that effect. His request to this court is very minimal. It's merely that this court correct the errors that the district court clearly made. He certainly would not want to prevent this court from speaking more broadly on the ways that the United States sometimes manipulates this process. There are no further questions. Thank you. Thank you very much. Thank you all very much. The case just argued will be submitted. Court will stand in recess for the day.
judges: Reinhardt, W. Fletcher, Owens